**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TODD A. SHAMBLIN and DAWN SHAMBLIN,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>CHESAPEAKE ENERGY CORPORATION, CHESAPEAKE APPALACHIA, LLC, NOMAC DRILLING, LLC, HODGES TRUCKING COMPANY, LLC, GREAT PLAINS OILFIELD RENTAL, LLC,<br><br>　　　　Defendants. | CIVIL ACTION NO. 3:CV-12-089<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment (Doc. 35) filed by Defendants Chesapeake Energy Corporation ("Chesapeake Energy"), Chesapeake Appalachia, LLC ("Chesapeake Appalachia"), and Nomac Drilling, LLC ("Nomac") (collectively, "Moving Defendants").  Because a genuine dispute of fact exists as to the identify of Plaintiff Todd A. Shamblin's ("Shamblin") employer at the time he suffered the injuries complained of in this action and Moving Defendants are not otherwise entitled to summary judgment, Moving Defendants' motion will be denied.

**I. Relevant Background**

On December 15, 2009, Shamblin was moving a sheave block pulley from a drilling rig across a metal catwalk when the catwalk collapsed underneath him. (Doc. 37, "*Defs.' SMF*," ¶ 1, Ex. A; Doc. 39, "*Plfs.' Answer*," ¶ 1.)  It is undisputed that Shamblin was injured while acting within the course and scope of his employment. (*Defs.' SMF*, ¶ 2; *Plfs.' Answer*, ¶ 2.)

As a result of the accident, Shamblin sustained severe and permanently disabling

injuries to his right hand. (*Compl.*, ¶ 21.)  These injuries included, but were not limited to, a closed fracture of the phalanges of the right hand and an open fracture of the distal phalanx. (*Id.*)  Due to the seriousness of the injuries, Shamblin's right fourth digit was amputated at the distal phalangeal level. (*Id.*)

Following the accident, a "Drilling Safety Investigation Report" was prepared on a Chesapeake Energy form. (*Plfs.' Answer*, Ex. H.)  The Drilling Safety Investigation Report indicates that Shamblin's relationship to "COI" was as an "Employee" rather than a "Contractor Employee". (*Id.*)

Chesapeake Appalachia leased the gas well drilling site and operated the natural gas well where the accident occurred. (*Defs.' SMF*, ¶ 6; *Plfs.' Answer*, ¶ 6.)  On December 3, 2009, prior to the accident, Chesapeake Appalachia entered into a "Drilling Bid Proposal and Daywork Drilling Contract" with Nomac. (*Defs.' SMF*, ¶ 7; *Plfs.' Answer*, ¶ 7.)  That document identifies Chesapeake Appalachia as "Operator" and Nomac as "Contractor". (Doc. 35, Ex. C.)  The Daywork Drilling Contract states: "Operator engages Contractor as an independent contractor to drill the hereinafter designated well or wells in search of oil or gas on a Daywork Basis." (*Id.*)  The Daywork Drilling contract defines "Daywork" and "Daywork Basis" to mean "Contractor shall furnish equipment, labor, and perform services as herein provided, for a specified sum per day under the direction, supervision, and control of Operator [inclusive of any employee, agent, consultant or subcontractor engaged by Operator to direct drilling operations]." (*Id.*)

Following the accident, Shamblin received Workers' Compensation Benefits as a result of his injuries, and his claim was fully resolved pursuant to a Compromise and Release Agreement approved by a Pennsylvania Workers' Compensation Judge. (*Defs.' SMF*, ¶ 3; *Plfs.'s Answer*, ¶ 3.)   The Findings of Fact prepared by the Workers' Compensation Judge states that Shamblin sustained his injuries "during the course of his

employment with Chesapeake Energy Corporation." (*Plf.'s Answer*, Ex. B.) The "Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act" also identifies Shamblin's employer as Chesapeake Energy. (*Plfs.' Answer*, Ex. C.) The Compromise and Release Agreement further provides that "this settlements ends forever [Shamblin's] entitlement to indemnity, medical and specific loss benefits for any injury sustained during Claimant's employment at Chesapeake Energy Corporation, including the injury of December 15, 2009." (*Id*. at ¶ 16.) The "Notice of Compensation Payable" filed with the Department of Labor and Industry similarly identifies Shamblin's employer as Chesapeake Energy. (*Plfs.' Answer*, Ex. D.) Likewise, the "Statement of Wages" form indicates Shamblin's employer was Chesapeake Energy. (*Plfs.' Answer*, Ex. E.) And, the "Petition for Physical Examination or Expert Interview of Employee" submitted with the Department of Labor and Industry reflects Shamblin's employer as Chesapeake Energy. (*Plfs.' Answer*, Ex. F.)

When Shamblin received his paychecks, however, the name "Nomac Drilling" appeared on the checks. (*Shamblin Dep.*, 26:25-27:5.) And, for years 2009 and 2010, Shamblin received W-2 statements listing his employer's name as Nomac Drilling, L.L.C. (Doc. 35, Ex. B; *Defs.' SMF*, ¶ 4; *Plfs.' Answer*, ¶ 4.)

Based on the foregoing, Shamblin and his wife Dawn Shamblin (collectively, Plaintiffs") commenced this action against Defendants on or about December 1, 2011 in the Court of Common Pleas of Bradford County, Pennsylvania. (*Compl*.) With respect to Chesapeake Energy and Chesapeake Appalachia, the Complaint asserts claims for negligence (Count I) and loss of consortium (Count IV). (*Id*.) As to Nomac, the Complaint states claims for negligence (Count II) and loss of consortium (Count IV). (*Id*.)

The action was subsequently removed to this Court. (Doc. 18.) Now, as discovery has closed, Defendants Chesapeake Energy, Chesapeake Appalachia, and Nomac seek

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Moving Defendants' motion for summary judgment (Doc. 35), statement of material facts (Doc. 37), and supporting brief (Doc. 36) were filed on December 23, 2013. On January 14, 2014, Plaintiffs filed their answer to Moving Defendants' statement of material facts (Doc. 39) and brief in opposition to the motion for summary judgment (Doc. 40). Moving Defendants did not file a reply brief in further support of their motion. As such, the motion for summary judgment is ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material

4

fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477

U.S. at 249, 106 S. Ct. 2505.

### III. Discussion

Moving Defendants' motion for summary judgment addresses four issues. The threshold issue raised by Moving Defendants is based on their claim that Nomac was Shamblin's employer at the time of the accident. They thus conclude that Nomac is entitled to immunity pursuant to Pennsylvania's Workers' Compensation Act. Second, Moving Defendants contend that Chesapeake Appalachia is entitled to immunity pursuant to Pennsylvania's statutory employer defense. Third, and in the alternative, Moving Defendants argue that Chesapeake Appalachia is entitled to summary judgment because it did not owe a duty to Shamblin. Lastly, Moving Defendants maintain that Chesapeake Energy is entitled to summary judgment because it also did not owe Shamblin a duty. These issues will be addressed in *seriatim*, and, for the reasons that follow, Moving Defendants' motion for summary judgment will be denied in its entirety.

**A.    There is an issue of fact as to the identity of Shamblin's employer.**

The underlying premise of Moving Defendants' motion for summary judgment is based on the claim that Shamblin was employed by Nomac at the time of the accident. Thus, Nomac asserts it is entitled to immunity pursuant to the Pennsylvania's Workers' Compensation Act.

> Section 481(a) of the Pennsylvania Workers' Compensation Act provides:
>
> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 Pa. Stat. Ann. § 481(a). "Injury" and "personal injury", as used in the Workers' Compensation Act, "mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment

6

and related thereto, . . ." 77 Pa. Stat. Ann. § 411(1).  "The Pennsylvania Workers' Compensation Act 'grants employees the right to a fixed level of compensation for work-related injuries and, in return, exempts their employers from common law liability for negligence.'" *Claudio v. MGS Mach. Corp.*, 798 F. Supp. 2d 575, 580 (E.D. Pa. 2011) (quoting *Mathis v. United Eng'rs & Constructors, Inc.*, 554 A.2d 96, 101 (Pa. Super. Ct. 1989)).  Thus, "[w]here an employee's injury is compensable under the Act, the compensation provided by the statute is the employee's exclusive remedy against his or her employer." *Black v. Labor Ready, Inc.*, 995 A.2d 875, 876 n.3 (Pa. Super. Ct. 2010) (quoting *Albright v. Fagan*, 671 A.2d 760, 762 (Pa. Super. Ct. 1996)).  The parties agree that Shamblin was acting in the course and scope of his employment at the time he was injured.

Nomac's motion for summary judgment pursuant to the Pennsylvania Workers' Compensation Act will be denied because a genuine issue of fact exists as to the identity of Shamblin's employer at the time he sustained the injuries complained of in this action. In particular, based on the summary judgment record, a dispute exists as to whether Shamblin was employed by Nomac or Chesapeake Energy at the time of the accident.

There is evidence in the record that supports a finding that Nomac was Shamblin's employer.  Specifically, Shamblin received his W-2 statements for years 2009 and 2010 from Nomac. (Doc. 35, Ex. B.)  Likewise, although Shamblin testified during his deposition that he could not identify who his employer was when he worked in Pennsylvania because it was a "gray area," (*Shamblin Dep.*, 25:11-18), he also indicated that the name Nomac Drilling appeared on his paychecks. (*Id.* at 26:25-27:5.)

However, there is also evidence in the record indicating that Shamblin was employed by Chesapeake Energy at the time of the accident.  For example, while Shamblin testified that the name Nomac Drilling was on his paychecks, the paychecks came in envelopes bearing the name Chesapeake Energy. (*Shamblin Dep.*, 27:6-9.)  Additionally, the "Drilling

Safety Investigation Report" identifies Shamblin's relationship with "COI" as an "Employee" and not a "Contractor Employee." (*Plfs.' Answer*, Ex. H.) Moreover, as detailed above, numerous documents from Shamblin's workers' compensation proceeding identify his employer as Chesapeake Energy. (*Plfs.' Answer*, Exs. B-F.) Although Moving Defendants argue that Chesapeake Energy was designated as Shamblin's employer in the workers' compensation proceeding only because its insurer, Liberty Mutual, set up the claim in such a manner, Moving Defendants fail to substantiate this statement with a citation to any evidence in the record. And, even if they had supported this contention with competent evidence, summary judgment in Nomac's favor would not be appropriate in view of the other evidence in the record supporting the conclusion that Shamblin was employed by Chesapeake Energy at the time of the accident.

Accordingly, because a genuine issue of fact exists as to the identify of Shamblin's employer at the time he was injured, Nomac's motion for summary judgment on the basis that it is entitled to immunity under the Pennsylvania Workers' Compensation Act will be denied.

**B.    Chesapeake Appalachia is not entitled to summary judgment pursuant to Pennsylvania's statutory employer defense.**

Second, Moving Defendants claim that Chesapeake Appalachia is immune from suit in this action because it was Shamblin's statutory employer. According to Chesapeake Appalachia, it satisfies the test set forth by the Pennsylvania Supreme Court in *McDonald v. Levinson Steel Co.*, 153 A. 424, 426 (Pa. 1930) for determining whether a party qualifies as a statutory employer under 77 Pa. Stat. Ann. § 52.

Section 52 provides:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

8

77 Pa. Stat. Ann. § 52.  The term "contractor" as used in the Workers' Compensation Act:

> shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, but shall include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken.

77 Pa. Stat. Ann. § 25.

Pursuant to *McDonald*, a party must establish the following elements to be deemed a statutory employer:

> (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald*, 153 A. at 426.  The burden of proving statutory employer status is upon the party asserting the defense. *See Guglielmo v. Scotti & Sons, Inc.*, 58 F.R.D. 413, 417 (W.D. Pa. 1973) (citing *Stipanovich v. Westinghouse*, 231 A.2d 894, 898 (Pa. Super. Ct. 1967).  And, "[i]n determining whether a party is a statutory employer, courts should construe the elements of the *McDonald* test strictly and find statutory employer status only when the facts clearly warrant it." *Peck v. Delaware Cnty. Bd. of Prison Inspectors*, 814 A.2d 185, 189 (Pa. 2002).

"A contractor cannot claim statutory employer immunity with respect to an independent contractor." *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642, 645 (Pa. Super. Ct. 1997) (citing *Robson v. Martin*, 140 A. 339 (Pa. 1928); *Strunk v. Keller*, 75 Pa. Super. 462 (Pa. Super. Ct. 1921)).  As a result, "in order to satisfy the *McDonald* test, a master-servant relationship must exist.  Further, because an independent contractor can never be a statutory employee, the elements of the *McDonald* test cannot be met where a 'contractor' is an independent contractor." *Gillingham v. Consol Energy*, Inc., 51 A.3d 841, 856 (Pa. Super. Ct. 2012) (citations omitted); *see also Rolick v. Collins Pine Co.*, 925 F.2d 661 (3d Cir. 1991) (holding that an independent contractor could not be a statutory

employee of the general contractor); *Peck v. Delaware Cnty. Bd. of Prison Inspectors*, 765 A.2d 1190, 1195 (Pa. Cmwlth. Ct. 2001).

Chesapeake Appalachia's motion for summary judgment pursuant to the statutory employer defense will be denied. First, there is evidence in the record suggesting that Nomac was retained by Chesapeake Appalachia as an independent contractor. Significantly, the Daywork Drilling Contract provides that Chesapeake Appalachia engaged Nomac "as an independent contractor to drill the . . . designated well or wells in search of oil or gas on a Daywork Basis." (Doc. 35, Ex. C.) While courts are not controlled by the names used by the parties to describe their relationship, *see Lascio*, 704 A.2d at 645, and courts must also evaluate the circumstances surrounding the parties' relationship, *see Rolick*, 925 F.2d at 665, the circumstances of the Chesapeake Appalachia-Nomac relationship are not clear on the present record. Moreover, and in any event, the fifth element of the *McDonald* test requires that Shamblin was an employee of Nomac. *See McDonald*, 153 A. at 426; *see also Rolick*, 925 F.2d at 665. For the reasons discussed above, there is a genuine issue as to the identity of Shamblin's employer at the time of the accident. As such, Chesapeake Appalachia fails to establish all elements set forth in *McDonald* or that the facts clearly warrant a finding of statutory employer status.

**C.  Chesapeake Appalachia owed Shamblin a legal duty.**

In the alternative, Chesapeake Appalachia argues it is entitled to summary judgment on Shamblin's negligence claim on the basis that it did not owe him a legal duty.

A negligence claim requires proof of four elements under Pennsylvania law: (1) a duty or obligation recognized by law; (2) a breach of the duty; (3) causal connection between the actor's breach of the duty and the resulting injury; and (4) actual loss or damage suffered by complainant. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287 (Pa. Super. Ct. 2005) (citing *Reilly v. Tiergarten, Inc.*, 633 A.2d 208 (Pa. Super. Ct. 1993)).

> In Pennsylvania, the determination of whether a duty of care is owed is a policy decision that requires the trial court to apply the '*Althaus* test.' That inquiry requires that the court consider: '(1) the relationship between the parties: (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution.'

*Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009) (quoting *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000)).

Chesapeake Appalachia's motion for summary judgment based on its claimed lack of duty will be denied. The Daywork Drilling Contract provides that Nomac was to work under Chesapeake Appalachia's "direction, supervision, and control." (Doc. 35, Ex. C.) That agreement also requires Chesapeake Appalachia and its representatives and subcontractors to support Nomac Drilling's safety policies and procedures. (*Id*.) Moreover, there is evidence in the record that Chesapeake Appalachia employed full-time, on-site employees where the accident occurred. One Chesapeake Appalachia employee was responsible for drilling site safety oversight and ensuring that all work was performed in compliance with Chesapeake Energy's "Environmental, Health & Safety (EH&S) Manual," while another employee was to monitor drilling operations to include safety activities on a given site. (*Plfs.' Answer*, Ex. J.) Chesapeake Energy's EH&S policies also "apply to the activities of Chesapeake, its subsidiary, and/or affiliated companies." (*Plfs.' Answer*, Ex. K.) The EH&S Manual provides that "workplace safety," "employee welfare," and compliance with governmental regulation and legislation "is a fundamental part" of its "daily operations." (*Id*.) In that regard, the EH&S Manual also states: "Chesapeake employees have the right and responsibility to stop any work which they believe may adversely impact the environment, the health, and/or safety of employees, contractors/vendors, and/or the public or puts Chesapeake at risk." (*Id*.) In view of this evidence, Chesapeake Appalachia had a duty to ensure the drilling site was safe for workers. Chesapeake Appalachia's motion for summary judgment will therefore be denied.

11

**D.     Chesapeake Energy is not entitled to summary judgment on Shamblin's negligence claim.**

Lastly, Chesapeake Energy argues that it is entitled to summary judgment because it did not owe Shamblin a legal duty.  According to Chesapeake Energy, it "simply had no relationship or connection whatsoever with Plaintiff Todd A. Shamblin, and was not a party to the Drilling Bid Proposal and Day Work Drilling Contract . . . ." (Doc. 36, 20.)  As detailed previously, there is evidence in the record which suggests that Chesapeake Energy was Shamblin's employer.  Additionally, Chesapeake Energy's EH&S Manual sets forth the primary applicable safety programs for the drilling project where Shamblin was injured.  (*Plfs.' Answer*, Ex. K.)  Therefore, Chesapeake Energy's motion for summary judgment will be denied.

## IV. Conclusion

For the above stated reasons, the motion for summary judgment filed by Defendants Chesapeake Energy, Chesapeake Appalachia, and Nomac Drilling will be denied in its entirety.

An appropriate order follows.

February 26, 2014                                             /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                         United States District Judge